Filed 4/8/14  Blueberry Hill Restaurants v. Superior Court CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| BLUEBERRY HILL RESTAURANTS, INC., et al.,<br><br>      Petitioner,<br><br>v.<br><br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES,<br><br>      Respondent;<br><br>GOODMAN FOOD PRODUCTS, INC., et al.,<br><br>      Real Parties in Interest. | B250597<br><br>(Los Angeles County Super. Ct. No. BC481797) |

ORIGINAL PROCEEDINGS in mandate.  Michael L. Stern, Judge.  Petition granted.

Joseph R. Wilbert; Michael E. Lopez; Pepper Hamilton, Harry P. Weitzel and Jeffrey M. Goldman, for Petitioner.

No appearance for Respondent.

Hobart Linzer, Kenneth A. Linzer, Joseph N. Akrotirianakis, Amy Duncan and Elisha Weiner, for Real Parties in Interest.

Petitioner Blueberry Hill Restaurants, Inc. (Blueberry Hill) filed the instant petition for writ of mandate challenging the trial court's order denying its motion to disqualify counsel for real party in interest Goodman Food Products, Inc. (Goodman) in litigation arising from a contract dispute. We conclude the motion to disqualify was, in effect, unopposed, and therefore should have been granted. We will grant the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

The litigation at issue involves a vegetable patty invented by Blueberry Hill and manufactured and sold by Goodman, pursuant to a contract by which Blueberry Hill receives a royalty. It appears that Goodman subsequently began manufacturing and selling a *gluten-free* vegetable patty. Blueberry Hill takes the position that Goodman's gluten-free vegetable patty was simply a variation of the Blueberry Hill patty, for which Blueberry Hill was entitled to royalties. Goodman takes the position that the gluten-free vegetable patty was its own creation, and that Blueberry Hill's statements to the contrary threatened Goodman's contractual relations with third parties. Goodman brought suit against Blueberry Hill; Blueberry Hill cross-complained against Goodman.

At issue in this writ proceeding is the continued representation of Goodman by Attorney Linzer, and his firm Hobart Linzer LLP.[1] Attorney Linzer had represented both Goodman and Blueberry Hill in separate matters in the past.[2] Blueberry Hill

---

[1] Attorney Linzer's firm was previously Linzer & Associates. Where applicable, references to Attorney Linzer include both firms.

[2] Although Attorney Linzer *simultaneously* represented Goodman and Blueberry Hill, there was never a *joint* representation. That is, Attorney Linzer did not previously represent both Goodman and Blueberry Hill in the same matter.

argues that Attorney Linzer must be disqualified from representing Goodman in the instant matter because of his representation of Blueberry Hill in other matters. We discuss the relevant facts[3] and procedural background.

1.     *Blueberry Hill Retains Attorney Linzer*

In 2004, before Goodman and Blueberry Hill had entered into the contract that is the subject of the instant litigation, Goodman referred Blueberry Hill to Attorney Linzer. Blueberry Hill retained Attorney Linzer to be its attorney. Attorney Linzer was initially retained only to assist Blueberry Hill in trademark matters.

2.     *The December 2004 Conflict of Interest Waiver Letter*

Attorney Linzer prepared a "Conflict of Interest Waiver Letter" for Blueberry Hill's president to sign.[4] The document indicated that Attorney Linzer was being

---

[3]     As we shall discuss, it is not proper for this court to consider Goodman's opposition to the motion to disqualify. Therefore, our discussion of the facts is limited to the facts as presented by Blueberry Hill in support of the motion to disqualify.

[4]     We set forth the text of the letter in full: "As you know, the Law Offices of Linzer & Associates, P.C. (the 'Firm') have been asked to represent Blueberry Hill Restaurants Inc. ('Blueberry Hill') in the preparation, filing and prosecution of certain trademark applications. Our firm also currently represents Goodman Food Products, Inc. ('Goodman Foods') in various corporate and business litigation matters. The rules of professional conduct of the State Bar of California prohibit a member of the bar from representing conflicting interests, except with the written consent of all parties concerned, Rules of Professional Conduct 5-102(B). [¶] Because the interests of Blueberry Hill and Goodman Foods may at some time in the future become adverse to one another, for example, should the two businesses enter into a co-packing arrangement, an actual conflict would exist and must be disclosed to each of you, as it has been. Therefore, the Firm needs for each of you to sign a Waiver of Conflict letter to acknowledge the fact that by this letter you have been advised of the contents of this letter and allow the Firm to represent or act on behalf of both of you. This is the purpose of this letter. [¶] In view of the foregoing, you hereby acknowledge that you: [¶] (a) have been advised by Linzer & Associates, P.C. that Blueberry Hill's interests in

retained "in the preparation, filing and prosecution of certain trademark applications." It stated that Attorney Linzer also represented Goodman, and sought to obtain Blueberry Hill's "written consent" in the event Blueberry Hill and Goodman "may at some time in the future become adverse to one another."

The Conflict of Interest Waiver Letter, dated December 16, 2004, explained, "The rules of professional conduct of the State Bar of California prohibit a member of the bar from representing conflicting interests, except with the written consent of all parties concerned, Rules of Professional Conduct 5-102(B)." Indeed, Rules of Professional Conduct *former* rule 5-102(B) had provided, "A member of the State Bar shall not represent conflicting interests, except with the written consent of all parties concerned." However, that rule had been replaced by Rules of Professional Conduct rule 3-310 effective 1989. In other words, Attorney Linzer's Conflict of Interest Waiver

certain matters may conflict with those of Goodman Foods; [¶] (b) have received from Linzer & Associates, P.C. a full disclosure of the facts causing that conflict of interest; [¶] (c) have been advised by Linzer & Associates, P.C. to have independent counsel review the legal implications of the Firm's joint representation and be consulted regarding future litigation and negotiations strategies; [¶] (d) have agreed to have Linzer & Associates, P.C. prepare, file and prosecute certain trademark applications on behalf of Blueberry Hill; [¶] (e) have agreed that Linzer & Associates, P.C. will not be representing Blueberry Hill in any contract negotiations with Goodman Foods; [¶] (f) have agreed that Linzer & Associates, P.C. will not be obtaining any confidential information regarding its co-packing arrangement with Goodman Foods from Blueberry Hill; [¶] (e) [*sic*] have agreed that any conflict that may arise will not serve as a basis for Linzer & Associates, P.C.'s disqualification in representing Goodman Foods in any matter, including any matter which is or may be adverse to Blueberry Hill, with the exception of any disputes with respect to trademark matters for which we have filed applications for federal trademark registration on behalf of Blueberry Hill." The letter is signed by Attorney Linzer for Linzer & Associates. Then it is signed by the president of Blueberry Hill, under the line, "The undersigned acknowledges the foregoing and agrees to the representation of Blueberry Hill and Goodman Foods by Linzer & Associates, P.C. under these circumstances."

4

Letter cited to, quoted, and attempted to satisfy, a standard which had been superseded some *fifteen years* prior to the date of the letter. Specifically, while former rule 5-102(B) had required "written consent," rule 3-310 requires "*informed* written consent" when representing clients with potentially conflicting interests. (Rules Prof. Conduct, rule 3-310(C)(1).) Moreover, the rule specifically defines "informed written consent" as the "client's written agreement to the representation following written disclosure." (Rules Prof. Conduct, rule 3-310(A)(2).) "Disclosure," in turn, is defined as "informing the client or former client of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client or former client." (Rules Prof. Conduct, rule 3-310(A)(1).)

That Attorney Linzer's Conflict of Interest Waiver Letter failed to satisfy this standard is clear from the text of the letter itself. As Attorney Linzer was relying on a prior rule that did not require *written* disclosure, the letter did not include written disclosure, but simply had an acknowledgement of some other (perhaps oral) disclosure. It stated, "you hereby acknowledge that you: [¶] (a) have been advised by Linzer & Associates, P.C. that Blueberry Hill's interests in certain matters may conflict with those of Goodman . . . ; [and] [¶] (b) have received from Linzer & Associates, P.C. a full disclosure of the facts causing that conflict of interest . . . . " But the letter itself did not fully disclose any facts causing a conflict, stating only that Blueberry Hill and Goodman's interests "may at some time in the future become adverse to one another, for example, should the two businesses enter into a co-packing arrangement."

Moreover, as to the scope of work Attorney Linzer would do for Blueberry Hill, the letter addressed only Attorney Linzer's representation of Blueberry Hill in connection with trademark matters. It specifically stated that Blueberry Hill "agreed to have [Attorney Linzer] prepare, file and prosecute certain trademark applications on behalf of Blueberry Hill." As such, it was silent as to any conflict which might arise if Attorney Linzer performed other work for Blueberry Hill. Indeed, the letter obtained Blueberry Hill's agreement that Attorney Linzer would "not be obtaining any confidential information regarding its co-packing arrangement with Goodman Foods from Blueberry Hill." It was silent as to any other confidential information that Attorney Linzer might obtain from Blueberry Hill.

The Conflict of Interest Waiver Letter provided that Blueberry Hill "agreed that any conflict that may arise will not serve as a basis for [Attorney Linzer's] disqualification in representing Goodman . . . in any matter, including any matter which is or may be adverse to Blueberry Hill, with the exception of any disputes with respect to trademark matters for which we have filed applications for federal trademark registration on behalf of Blueberry Hill." However, given the letter's failure to comply with the informed disclosure requirements of Rules of Professional Conduct rule 3-310, and the subsequent circumstances which expanded the scope of Attorney Linzer's representation beyond that anticipated by the letter, the waiver is unenforceable.[5]

---

[5] Indeed, we note that the letter provided that Attorney Linzer would do only trademark work for Blueberry Hill, and that, should a conflict arise between Goodman and Blueberry Hill, Attorney Linzer would represent Goodman, *except with respect to the trademarks Attorney Linzer obtained for Blueberry Hill.* In other words, the letter

6

### 3. *The Scope of Attorney Linzer's Representation Increases*

Although Attorney Linzer was initially retained by Blueberry Hill in 2004 to assist with obtaining trademark protection, the scope of his representation greatly expanded. From 2004 to 2012, Attorney Linzer was Blueberry Hill's "primary attorney advising it on various matters." For example, he represented Blueberry Hill in litigation with a franchisee through settlement of the dispute, thereby learning confidential information regarding Blueberry Hill's financial situation and litigation strategy.

From 2005 to 2012, Attorney Linzer "was directly involved in many of the interactions between Blueberry Hill and Goodman concerning the production and sale of the Blueberry Hill vegetable patty." He specifically advised Blueberry Hill about how to interact with Goodman "regarding potential business opportunities for selling the veggie patty and other products." In 2009, Blueberry Hill consulted with Attorney Linzer about the very agreement that is the subject of the instant litigation, seeking his assistance in clarifying the agreement. In general, Blueberry Hill's owner "confided in" Attorney Linzer, telling him her "thoughts on the status of Blueberry Hill's relationship with Goodman, particularly concerning Blueberry Hill's vegetable products."

---

provided that Attorney Linzer would represent *Blueberry Hill* in a dispute with Goodman which might arise from the *only* work Attorney Linzer anticipated doing for Blueberry Hill. Surely, it would not be unreasonable for Blueberry Hill to believe that, when Attorney Linzer later performed non-trademark work for it, Attorney Linzer would take Blueberry Hill's part in litigation arising from that additional work as well.

4.  *Attorney Linzer Sends Blueberry Hill a Cease and Desist Letter for Goodman*

Goodman's dispute with Blueberry Hill over the gluten-free vegetable patty escalated. On February 3, 2012, Attorney Linzer sent Blueberry Hill a cease and desist letter, demanding that Blueberry Hill cease claiming that it had royalty rights to the gluten-free patty. The cease and desist letter stated that Attorney Linzer had previously advised Blueberry Hill that if a dispute ever arose between Blueberry Hill and Goodman, Attorney Linzer would represent only Goodman and Blueberry Hill would be required to obtain independent counsel. The letter stated, "that day has now arrived."

However, Attorney Linzer continued performing legal work for Blueberry Hill. On February 29, 2012, Attorney Linzer's firm billed Blueberry Hill for some trademark work performed on February 7 and 22, 2012.

5.  *Attorney Linzer Terminates Blueberry Hill as a Client, and Brings Suit*

On March 7, 2012, one month after the cease and desist letter, Attorney Linzer wrote Blueberry Hill officially terminating the representation in all matters.[6] On

---

[6]  It is interesting to note that this letter contained an overstatement of the Conflict of Interest Waiver Letter Attorney Linzer had obtained from Blueberry Hill. The termination letter stated, "In fact, you signed a waiver of conflict of interest letter, . . . stating that you had not divulged any confidential information regarding *your business or the [Goodman] arrangement* to us." (Emphasis added.) In fact, the Conflict of Interest Waiver Letter had stated only that Blueberry Hill agreed that Attorney Linzer would "not be obtaining any confidential information regarding *its co-packing arrangement with Goodman* Foods from Blueberry Hill." Setting to one side the issue of whether the royalty agreement Blueberry Hill entered into with Goodman was a "co-packing" agreement, it is clear that the Conflict of Interest Waiver Letter said nothing about Blueberry Hill agreeing that it would not divulge any confidential information about its *business* to Attorney Linzer.

8

March 26, 2012, Goodman, represented by Attorney Linzer, brought the instant action against Blueberry Hill.

6.      *The Litigation Proceeds*

As the action proceeded, Blueberry Hill became increasingly concerned about Attorney Linzer's continued representation of Goodman.  At an October 2012 deposition of one of Blueberry Hill's officers, Attorney Linzer questioned her regarding whether Blueberry Hill had applied for intellectual property protection for its proprietary vegetable patty recipe.  But Blueberry Hill had "relied on [Attorney] Linzer's advice concerning the extent to which Blueberry Hill should apply for intellectual property protection."

In a March 2013 meet and confer letter, Attorney Linzer disclosed a privilege log.  The log indicated that Attorney Linzer had worked with Goodman on a draft letter to Blueberry Hill, in connection with this dispute, as early as January 26, 2012.

7.      *Blueberry Hill Moves to Disqualify Attorney Linzer*

On April 5, 2013, Blueberry Hill moved to disqualify Attorney Linzer from continuing to represent Goodman in this action.  Blueberry Hill argued that disqualification was mandated on two grounds:  (1) breach of the duty of loyalty, due to Attorney Linzer's simultaneous representation of both Goodman and Blueberry Hill from January 26, 2012 through March 7, 2012; and (2) breach of the duty of confidentiality, due to Attorney Linzer's prior representation of Blueberry Hill in matters substantially related to the instant litigation.

9

Anticipating the argument expected to be made by Goodman in response, Blueberry Hill argued that the Conflict of Interest Waiver Letter was inadequate to waive Attorney Linzer's disqualification. It further argued that the motion to disqualify was not untimely.

8. *Goodman Argues Opposition is Barred by the Attorney-Client Privilege*

Goodman felt that, in order to properly oppose the motion to disqualify, it would be necessary to reveal information which potentially was subject to Blueberry Hill's attorney-client privilege. We stress that Goodman argued that *no opposition could be filed* without such information. Thus, Goodman filed an ex parte application for an order either finding that the attorney-client privilege had been waived with respect to the motion to disqualify or denying the motion to disqualify. In its application, Goodman argued, "[U]ntil there has been an adjudication that Blueberry Hill has waived the attorney-client privilege as to matters related to the Motion, such that [Attorney Linzer's firm] can file Mr. Linzer's declaration in opposition to the Motion, along with the exhibits thereto and the Memorandum of Points and Authorities in Opposition to the Motion to Disqualify [Attorney Linzer], [Goodman] *cannot oppose the Motion*." (Emphasis added.)

In order to file a timely opposition to the motion, Goodman filed the so-called "redacted version" of three documents – its opposition, a declaration of Attorney Linzer, and a declaration of a legal assistant at Attorney Linzer's firm. The documents were redacted in their entirety. The full text of each one stated only, "Papers will be filed conditionally under seal after June 5, 2013 hearing on ex parte application of Goodman

10

Food Products, Inc. [] for determination of any possible claim by Blueberry Hill . . . of any waiver by [Attorney Linzer] of the attorney client privilege without consent." (Capitalization omitted.)

The ex parte motion was denied as procedurally defective. The trial court considered it to be a request for an order shortening time for a noticed motion, which the court granted. The court set a briefing schedule on Goodman's motion for a determination that the attorney-client privilege had been waived with respect to matters at issue in the motion to disqualify Attorney Linzer. The motion was to be heard on June 14, 2013, the same day as the motion to disqualify itself.

Having lodged the unredacted opposition documents under seal, Goodman was concerned that the court may inadvertently review the sealed documents prior to ruling on whether the privilege had been waived, in preparing for the hearing on the motion to disqualify. As such, on June 6, 2013, Goodman filed a "Very Important Notice" to the court, requesting that the court not open or review the unredacted lodged documents until it had resolved the attorney-client privilege waiver issue.

9. *The June 14, 2013 Hearing*

The matters were heard on June 14, 2013. Blueberry Hill suggested that the trial court could grant the disqualification motion without ever reaching the attorney-client privilege waiver argument. The trial court agreed with the "approach" of addressing the motion to disqualify first, but concluded the motion to disqualify should be denied. The court gave no explanation for its ruling.

Later in the hearing, the court reached Goodman's motion to determine that the attorney-client privilege had been waived by Blueberry Hill's motion to disqualify. The court initially thought the motion might be moot by the denial of the motion to disqualify. However, Goodman's counsel sought a ruling on the motion, stating, "it's relevant in ways other than as to that motion."[7] The court heard argument on the merits of the motion, and denied it.

10. *Blueberry Hill's Writ Petition*

On August 13, 2013, Blueberry Hill filed a petition for writ of mandate, seeking a writ directing the trial court to grant its motion to disqualify Attorney Linzer.

11. *Goodman's Preliminary Opposition*

On August 23, 2013, Goodman filed a preliminary opposition to the writ petition. Among other arguments, Goodman argued that the writ petition was procedurally defective in that Blueberry Hill had not included all documents submitted to the court supporting and opposing the motion to disqualify. Specifically, Goodman argued that Blueberry Hill failed to include Goodman's opposition to the motion to disqualify and its supporting documents.[8] Goodman then attached to its preliminary opposition a copy

---

[7] The caption on the initial ex parte application sought an order *either* finding that Blueberry Hill had waived the attorney-client privilege in connection with the motion to disqualify *or* denying the motion to disqualify. Goodman had obtained the alternative relief it sought; the motion to disqualify had been denied. At the hearing, however, Goodman pursued a ruling on the issue that Blueberry Hill had waived the attorney-client privilege, apparently for some additional, unspoken purpose.

[8] Goodman suggested that the reporter's transcript of the hearing on the motion to disqualify indicated that its documents were considered by the trial court in ruling on the motion – despite the fact that Goodman had, in its "Very Important Notice,"

12

of the opposition it had lodged with the trial court, redacting "any portion that could conceivably be considered to reveal attorney-client communications."

We have not reviewed this partially-redacted opposition, as it was not before the trial court. However, we note that the document is 15 1/2 pages long, and has approximately 23 lines, or one page of text, redacted. In other words, although Goodman had argued to the trial court that it *could not oppose* the motion to disqualify unless the court found the attorney-client privilege to be waived, Goodman represented to this court that over 90% of its opposition points and authorities contained non-privileged material. In fact, Goodman took the position that Blueberry Hill's writ petition should be denied because Blueberry Hill failed to provide this court with a partially-redacted version of Goodman's opposition that Goodman had never provided to the trial court.

12. *Further Briefing*

We issued an order to show cause and set a briefing schedule. In connection with its return to the petition, Goodman filed several exhibits. Three of those exhibits were the unredacted versions of the three documents Goodman had lodged with the court in opposition to the motion to disqualify – the opposition, Attorney Linzer's

---

requested that the court *not* read the documents until it had ruled that the attorney-client privilege had been waived, which the court never did. In any event, Goodman relies on a statement by the trial court that the clerk gave the trial court all of the motions for that hearing, with the sealed documents in one pile and everything else in another. That the clerk provided the court with the sealed documents does not mean that the court *reviewed* those documents, especially when the court had been requested not to do so.

13

declaration, and the declaration of the legal assistant. Goodman moved to file those documents under seal; the motion was unopposed.

However, Goodman *also* filed an unsealed appendix of exhibits. Each of the three documents is identified in the appendix of exhibits as being encompassed by the motion to seal. The table of contents for the appendix of exhibits states that a "redacted copy of [each] document is included in" the unsealed volume of exhibits. As to two of those exhibits, the opposition and Attorney Linzer's declaration, this statement is simply untrue. Goodman represents that the version of the documents included in its unsealed appendix of exhibits is the redacted (or partially-redacted) version, but the appendix includes the unredacted version of both documents.[9] Blueberry Hill filed an objection, arguing that Goodman included privileged documents in its appendix of exhibits. We agree with Blueberry Hill with respect to the two unredacted documents; exhibits 1 (the opposition to the motion to disqualify) and 3 (Attorney Linzer's declaration) should not be part of the unsealed record in this writ petition. We hereby order them stricken from the record.

### CONTENTIONS OF THE PARTIES

Blueberry Hill contends that the trial court erred in denying its motion to disqualify Attorney Linzer. Goodman contends that the trial court's order was well-supported by substantial evidence, but relies, in large part, on documents which were not before the trial court.

---

[9]     Several of the exhibits to Attorney Linzer's declaration have been redacted, but the declaration itself has not been.

14

## DISCUSSION

1.      *Standard of Review*

" ' "Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion.  [Citations.]" [Citation.]  As to disputed factual issues, a reviewing court's role is simply to determine whether substantial evidence supports the trial court's findings of fact; "the reviewing court should not substitute its judgment for . . . express or implied [factual] findings [that are] supported by substantial evidence.  [Citations.]" [Citation.]  As to the trial court's conclusions of law, however, review is de novo; a disposition that rests on an error of law constitutes an abuse of discretion.  [Citations.]  The trial court's "application of the law to the facts is reversible only if arbitrary and capricious." [Citation.]' [Citation.]" (*Fiduciary Trust Internat. of California v. Superior Court* (2013) 218 Cal.App.4th 465, 477-478.)

2.      *Blueberry Hill's Motion Was Unopposed*

Before turning to the merits of Blueberry Hill's writ petition, we find it necessary to discuss the status of Goodman's opposition to the motion to disqualify.  Goodman filed blank documents in opposition to the motion.  It lodged unredacted versions, but specifically requested the court not to review those documents unless and until the court ruled in its favor on the motion to find the attorney-client privilege had been waived.  The court did not conclude that the attorney-client privilege had been waived; it specifically denied Goodman's motion seeking such a ruling.  Goodman does not

15

challenge that ruling in the instant writ petition.[10]  Therefore, in accordance with Goodman's *own request*, the lodged documents were neither filed nor considered by the trial court.  As such, *no* opposition to the motion to disqualify was before the trial court.  Therefore, no opposition to the motion to disqualify is properly before this court.  To the extent Goodman relies on any version of its opposition, redacted or unredacted, we disregard it.

Goodman very easily could have filed partially-redacted versions of its opposition documents with the trial court; indeed, Goodman has provided this court with a redacted version of its opposition points and authorities, leaving more than 90% of the document untouched.  Goodman chose not to do so before the trial court, preferring to take an "all or nothing" approach, so that it could argue to the trial court that *unless* the court found that Blueberry Hill had waived the privilege, Goodman *could not oppose* the motion to disqualify at all.  Having failed in its gamble, Goodman cannot now rely on the partially-redacted opposition it could and should have filed in the trial court.

---

[10]  Goodman makes two passing references (one in a footnote) to its belief that the privilege does not apply in this case, but makes no real argument to that effect.  Instead, Goodman argues that Blueberry Hill's *refusal to waive* the privilege prevented it from opposing the motion.  Goodman did not raise this argument before the trial court and, in any event, Goodman's premise is unsupported by the record.  In opposing Goodman's ex parte application, Blueberry Hill's counsel submitted an e-mail exchange in which Blueberry Hill's counsel confirmed that Goodman *could* discuss potentially privileged communications in its opposition to the motion to disqualify, as long as the opposition was filed under seal and Goodman agreed that Blueberry Hill's consent to this limited disclosure did not waive the privilege.  For reasons which are not entirely clear, this representation was not sufficient for Goodman, which chose instead to seek a court order holding that the privilege had been waived.

16

3. *The Motion to Disqualify Should Have Been Granted*

As the only evidence we can consider is the evidence submitted by Blueberry Hill in connection with its motion to disqualify Attorney Linzer, we reach the inescapable conclusion that the motion should have been granted. Blueberry Hill's motion was based on: (1) improper simultaneous representation of Blueberry Hill and Goodman in violation of the duty of loyalty; and (2) improper successive representation of Goodman and Blueberry Hill in violation of the duty of confidentiality. The motion also anticipated the defenses that any conflict had been waived and that the motion was untimely.

a. *Improper Simultaneous Representation*

"The primary value at stake in cases of simultaneous or dual representation is the attorney's duty—and the client's legitimate expectation—of *loyalty*, rather than confidentiality." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 284.) "Even though the simultaneous representations may have *nothing* in common, and there is *no* risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be *required*. Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one." (*Ibid.*)

"The reason for such a rule is evident, even (or perhaps especially) to the nonattorney. A client who learns that his or her lawyer is also representing a litigation adversary, even with respect to a matter *wholly unrelated* to the one for which counsel was retained, cannot long be expected to sustain the level of confidence and trust in

17

counsel that is one of the foundations of the professional relationship. All legal technicalities aside, few if any clients would be willing to suffer the prospect of their attorney continuing to represent them under such circumstances." (*Flatt v. Superior Court, supra,* 9 Cal.4th at p. 285.) Thus, "courts and ethical codes alike prohibit an attorney from simultaneously representing two client adversaries, even where the substance of the representations are unrelated." (*Ibid.*)

Blueberry Hill submitted substantial uncontroverted evidence that, from January 26, 2012 through March 7, 2012, Attorney Linzer represented Blueberry Hill while representing Goodman against Blueberry Hill. Indeed, Attorney Linzer sent Blueberry Hill a cease and desist letter on behalf of Goodman while his firm continued to bill Blueberry Hill for trademark work. Disqualification is therefore mandatory, unless Attorney Linzer properly obtained client consent (*Flatt v. Superior Court, supra,* 9 Cal.4th at p. 285, fn. 4) or could prevail on a claim of untimeliness.

b. *Improper Successive Representations*

"An attorney's representation of a client in a matter against a former client implicates the duty of confidentiality. 'Protecting the confidentiality of communications between attorney and client is fundamental to our legal system. The attorney-client privilege is a hallmark of our jurisprudence that furthers the public policy of ensuring " 'the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense.' [Citation.]" [Citation.] To this end, a basic obligation of every attorney is "[t]o maintain inviolate the confidence, and at

18

every peril to himself or herself to preserve the secrets, of his or her client." [Citation.]' [Citation.]" (*Fremont Indemnity Co. v. Fremont General Corp.* (2006) 43 Cal.App.4th 50, 66.)

"Rule 3-310(E) prohibits the successive representation of clients in certain circumstances without the informed written consent of the client and former client. . . . If there is a substantial relationship between the subject of the current representation and the subject of the former representation, the attorney's access to privileged and confidential information in the former representation is presumed and disqualification of the attorney from the current representation is mandatory in order to preserve the former client's confidences. [Citations.]" (*Fremont Indemnity Co. v. Fremont General Corp., supra,* 143 Cal.App.4th at pp. 66-67.)

In considering whether there is a substantial relationship between the former and current representations, a court should not look exclusively at the discrete legal and factual issues involved in the representations. (*Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 712.) We also consider whether the attorney acquired confidential information about the client or the client's affairs which is "material to the evaluation, prosecution, settlement or accomplishment of the litigation or transaction given its specific legal and factual issues." (*Id*. at p. 713.) This does not mean that an attorney who represented a former client is forever barred from representing that client's adversaries due to knowledge of the former client's "playbook" – its litigation strategies and attitudes toward settlement. Instead, to create a disqualification, "the information acquired during the first representation [must] be 'material' to the second; that is, it

19

must be found to be directly at issue in, or have some critical importance to, the second representation." (*Farris v. Fireman's Fund Ins. Co.* (2004) 119 Cal.App.4th 671, 680.)

While the evidence submitted by Blueberry Hill on the issue of the confidential information acquired by Attorney Linzer in the course of his prior representation was not overwhelming, in the absence of any opposition by Goodman, it stands undisputed. Blueberry Hill submitted the declaration of its owner to the effect that: (1) Attorney Linzer was Blueberry Hill's primary attorney advising it on business matters from 2004 to 2012; (2) Attorney Linzer advised Blueberry Hill on the extent to which it should seek intellectual property protection; (3) Attorney Linzer advised Blueberry Hill on how to interact with Goodman regarding potential business opportunities; (4) Blueberry Hill's owner confided in Attorney Lizner her thoughts on the status of Blueberry Hill's relationship with Goodman; and (5) Blueberry Hill specifically sought Attorney Linzer's advice in clarifying the agreement that is the subject of the instant litigation. As to the materiality of this information to the instant litigation, the evidence is undisputed that this case involves the scope of the contract between Blueberry Hill and Goodman, and whether it extends to the gluten-free vegetable patty. Blueberry Hill also submitted evidence that Attorney Linzer, while representing Goodman in this case, questioned Blueberry Hill's owner at deposition regarding intellectual property protection she had obtained for her recipe, a topic on which Attorney Linzer had advised Blueberry Hill. This evidence satisfies the substantial relationship test, and there is no evidence to the contrary. Thus, disqualification should have been ordered unless a defense applies.

20

c. *There Is Insufficient Evidence of Waiver*

It appears that the issue of waiver of a disqualifying conflict is one on which the party opposing the motion to disqualify bears the burden of proof. (*Flatt v. Superior Court, supra,* 9 Cal.4th at p. 285, fn. 4.) As Goodman filed no opposition to the motion, it is difficult to see how it could have sustained this burden.

In any event, the only evidence of waiver is the Conflict of Interest Waiver Letter obtained by Attorney Linzer in 2004. As we have discussed, the letter attempted to satisfy a standard which had been superseded 15 years earlier. Moreover, the letter is inadequate to satisfy the requirement of informed written consent following disclosure of the relevant circumstances and actual and foreseeable consequences. The letter contemplated Attorney Linzer's representation of Blueberry Hill exclusively in the prosecution of trademark protection. It disclosed nothing regarding the circumstances which would arise if and when Attorney Linzer became Blueberry Hill's primary attorney in all business matters, and specifically advised it in its dealings with Goodman. As such, the waiver is inadequate, and the trial court erred to the extent it relied on the waiver in denying the motion.

d. *There Is Insufficient Evidence of Untimeliness*

" '[A]ttorney disqualification can be impliedly waived by failing to bring the motion in a timely manner.' [Citation.] As explained by one court, 'it is not in the interests of justice to make the "substantial relationship" rule so unyielding as to permit the former client to inexcusably postpone objections without penalty. Therefore, a narrow exception should apply if the present client, by way of opposition, offers

21

prima facie evidence of an unreasonable delay by the former client in making the motion and resulting prejudice to the current client.' [Citation.] To operate as a waiver, however, the 'the delay [and] . . . the prejudice to the opponent must be extreme.' [Citations.] If the opposing party makes a prima facie showing of extreme delay and prejudice, the burden then shifts to the moving party to justify the delay. [Citations.]" (*Fiduciary Trust Internat. of California v. Superior Court, supra,* 218 Cal.App.4th at p. 490.)[11]

Goodman filed no opposition; it therefore made no showing of extreme delay and prejudice. While a court could infer delay from the passage of time between Blueberry Hill's awareness of the dual representation (its receipt of the cease and desist letter in February 2012) and its pursuit of disqualification (April 2013), prejudice cannot be presumed. Goodman suggests that we can infer prejudice from the docket sheet, which shows the extent to which this case has been litigated on its behalf by Attorney Linzer. This is not sufficient to establish extreme prejudice. There is, for example, no declaration by Goodman indicating how much it has paid Attorney Linzer to litigate this matter. Indeed, the record does not reflect whether Attorney Linzer is charging Goodman on an hourly or contingency basis. Nor is there any evidence in the record as to how long it would take new counsel for Goodman to prepare to take over the case if Attorney Linzer is disqualified. This appears to be a routine contract dispute; nothing in the docket sheet indicates new counsel could not pick up the case and continue the

---

[11] *Fiduciary Trust* is a successive representation case. (*Id*. at pp. 478-479.) We express no opinion on the issue of whether a party can waive attorney disqualification based on simultaneous representation by failing to timely bring the motion.

representation of Goodman without undue delay or expense.  Thus, extreme prejudice cannot be inferred.  Thus, untimeliness is not a legitimate basis on which the trial court could have denied the motion to disqualify.

### *DISPOSITION*

The petition for writ of mandate is granted. Let a peremptory writ issue directing the trial court to vacate its order denying Blueberry Hill's motion to disqualify Attorney Linzer from representing Goodman in this action and to enter a new and different order granting the motion. Blueberry Hill shall recover its costs in connection with this writ proceeding.

### *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

CROSKEY, Acting P. J.

WE CONCUR:

KITCHING, J.

ALDRICH, J.